OPINION
John Malapit appeals from his conviction in the Kettering Municipal Court of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1) and (3) and driving a motor vehicle while under suspension in violation of R.C. 4507.02.
The facts underlying this appeal are set out in the appellant's brief and are fully supported by our review of the record.
On April 24, 1999, at around midnight, Officer Lavigne of the Centerville Police Department was putting gas into his squad car at a gas station on the corner of South Main Street and Spring Valley Road. As he was doing that, he saw a black pick-up truck stopped at a red light in the intersection. The officer noticed that the truck was immediately behind a white Cadillac, so that there was barely any space between the two vehicles. Both cars were in the left hand through lane. (Tr. 6-7). When the light turned green, the officer saw the black pick-up take off then swerve into the right lane, nearly hitting the right curb. The vehicle then swerved back into the left lane. (Tr.6-7). Officer Lavigne entered his cruiser and followed the truck for about an eighth of a mile until he effected a stop. Throughout the time he followed, the truck continued to swerve from lane to lane. (Tr. 7, 17-18).
After the truck stopped, Lavigne walked up to the driver and asked for his driver's license. Appellant replied that his license was suspended due to his last D.U.I. (Tr. 8). Appellant's speech was slurred and "thick-tongued;" his eyes were bloodshot and glassy; and his car exuded a "real strong odor" of alcohol. (Tr. 8). Lavigne then asked appellant how much he had to drink; appellant replied, "way too fucking much." (Tr. 8). As appellant left his truck, he staggered and nearly fell. (Tr. 9). The officer had appellant walk to the back of the truck, where he asked appellant to take some field sobriety tests. At the same time he asked appellant how much he had drunk. Appellant replied that he had drunk four beers and two shots. (Tr. 10).
Lavigne then administered a number of field sobriety tests: the alphabet test; the finger to nose test; the finger dexterity test; the balance test; and the walk and turn test. (Tr. 10-14). Appellant passed the finger dexterity test but failed the others. (Tr. 12). Lavigne testified he then placed appellant under arrest for the D.U.I. violations and driving while under suspension. Appellant submitted to a breathalyzer test which indicated he had a prohibited blood alcohol concentration of .131.
Sergeant Scott Owsley of the Centerville Police Department testified he performed the calibration of the breath testing device. Owsley testified that the batch bottle certificate for the solution used in this case measured .102. On the tests he administered before and after appellant's test, Owsley testified the calibration result was 0.95. Owsley testified that the target value of the solution is .100 and the Ohio Department of Health Regulations allow for a deviation of .005 on either side of the target value. Accordingly, he testified the subject solution complied with the regulations.
On cross-examination, Owsley acknowledged that the calibration was actually .007 off the calibration of the bottle of solution actually used in this case. Owsley stated the regulations were changed after appellant's test permitting only the .005 deviation from the actual bottle measurement.
Prior to trial, Malapit moved to suppress the incriminating statements he made to Officer Lavigne and to suppress the results of a breathalyzer test administered to him. The trial court overruled Malapit's motion.
 In his first assignment of error, Malapit contends the trial court erred in refusing to suppress the incriminating statements he made to Officer Lavigne because these statements were made after he was in custody and without Miranda warnings., Appellant argues that he was in the custody of Officer Lavigne from the moment he admitted to the officer that he was driving his car while under a license suspension. Appellant argues that he was in custody because it was clear at the point he admitted his license was suspended that the officer knew he would not let him drive any further.
(Appellant's brief at page 6).
The State argues that the evidence demonstrated that appellant's incriminating statements were made before the field sobriety tests were administered and before appellant was arrested and placed in the "custody" of Officer Lavigne.
We agree with the State of Ohio. In Berkemer v. McCarty
(1984), 468 U.S. 420, 104 S.Ct. 3138, the United States Supreme Court held that the roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for purposes of the Miranda rule. The court held the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. A police officer's unarticulated plan has no bearing on the question whether the suspect was "in custody" at a particular time.
In this case Officer LaVigne did not tell the defendant he was under arrest prior to the defendant making the damaging statements. The defendant was in fact still seated in his automobile responding to LaVigne's inquiries when the first statements were made. We do not believe a reasonable person in the defendant's position at the time he made the statements would have thought he was under arrest. Accordingly, the first assignment of error is overruled.
In his second assignment, appellant argues that the trial court erred in not suppressing the breathalyzer test results because the breath testing equipment was not properly calibrated. Appellant notes that Sergeant Owsley admitted that the result of the instrument check was more than 0.005 grams per 210 liters of the target value for that instrument check solution. Contrary to Owsley's testimony such a result renders the instrument check "invalid" in this case pursuant to O.A.C. 3701-53-04 (eff. 7-7-97).
The State argues any violation of the administrative regulation should not render the test inadmissible because it was not a constitutional violation and, in any event, the proper time to raise an issue regarding the admissibility of the breathalyzer was at the trial of the charges.
In Defiance v. Kritz (1991), 60 Ohio St.3d 1, the Ohio Supreme Court held that a motion to suppress is a proper pretrial procedure for challenging breathalyzer test results when the defendant is charged with a violation of R.C. 4511.19(A)(3). The court also held a plea of no contest does not waive a defendant's appeal from an adverse ruling on the motion.
The State failed to demonstrate that it had "substantially" complied with the requirements of O.A.C. 3701-53-04. As such the BAC test results were inadmissible. State v. Plummer (1977),22 Ohio St.3d 292. The appellant's second assignment of error is Sustained. The defendant's conviction for the violation of R.C.4511.19(A)(3) is hereby Reversed.
Although the trial court should have suppressed the BAC test results, that error does not require us to reverse the defendant's conviction for driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). There was evidence present in the record below demonstrating beyond a reasonable doubt that the defendant operated his motor vehicle while under the influence of alcohol. The trial court properly convicted the defendant of that offense pursuant to his no contest plea because the BAC test result was not needed to demonstrate defendant's guilt under R.C.4511.19(A)(1). As such that conviction will be Affirmed. The defendant's conviction for driving while under suspension has not been challenged in this appeal and that conviction is Affirmed.
FAIN, J., and YOUNG, J., concur.